DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

HONORABLE MICHAEL C. DUNSTON, in )
his official capacity as          )
Presiding Judge of the Superior   )
Court of the Virgin Islands,      )
                                  )        Civil No. 2016-38
             Plaintiff,           )
                                  )
        v.                        )
                                  )
HONORABLE KENNETH MAPP, in his    )
official capacity as Governor of  )
the Virgin Islands; and the       )
HONORABLE HAROLD W.L. WILLOCKS,   )
strictly as an interested party,  )
                                  )
             Defendants.          )
_____ )

ATTORNEYS:

**Edward L. Barry, Esq.**
Christiansted, VI
        *For the Honorable Michael C. Dunston, in his official*
        *capacity as Presiding Judge of the Superior Court of the*
        *Virgin Islands.*

**Claude Walker, AG**
**Carol Thomas-Jacobs, AAG**
Virgin Islands Department of Justice
Christiansted, VI
        *For the Honorable Kenneth Mapp, in his official capacity as*
        *Governor of the Virgin Islands*

**MEMORANDUM OPINION**

**GÓMEZ, J.**

This matter is before the Court for a decision following a

consolidated hearing on the plaintiff's motion for injunctive

relief and a bench trial on the merits, which was tried on a

*Dunston v. Mapp, et. al.*
Civil No. 2016-38
Memorandum Opinion
Page 2

stipulated record. The Court, having considered the parties'
various pleadings, witness testimony at the hearing on the
motion for a temporary restraining order, exhibits, and the
arguments of counsel, now enters this Memorandum Opinion
pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.[1]

## I.    FINDINGS OF FACT AND PROCEDURAL HISTORY[2]

On July 24, 2013, then-Governor John P. de Jongh, Jr. ("de
Jongh") submitted a judicial nomination to the Virgin Islands
Senate. In his nomination letter sent to the President of the
Senate, de Jongh indicated that he was nominating current
Presiding Judge of the Superior Court Michael Dunston
("Dunston") to "an additional six (6) year term as Superior
Court Judge" and also "nominate[d] Judge Dunston to be Presiding
Judge of the Superior Court." ECF No. 27-2, at 2. Dunston was
unanimously approved by the Senate, with one absent senator. ECF
No. 27-2, at 1. De Jongh then signed a commission in which he
"appointed . . . [Dunston] to be Presiding Judge of the Superior
Court of the United States Virgin Islands effective September
26, 2013 – September 26, 2019." ECF No. 20-2.

---

[1] Pursuant to Federal Rule of Civil Procedure 52(a), the Court may enter
judgment following a trial without a jury. *See* Fed. R. Civ. P. 52(a). In
making a decision following a bench trial, "the court must find the facts
specially and state its conclusions of law separately." *Id.*
[2] To the extent that any finding of fact reflects a legal conclusion, it shall
be deemed a conclusion of law, and vice versa.

*Dunston v. Mapp, et. al.*
Civil No. 2016-38
Memorandum Opinion
Page 3

On June 16, 2016, Dunston received a phone call from Governor Kenneth Mapp ("Mapp"). In that phone call, Mapp indicated that he was designating Judge Harold W.L. Willocks as the Presiding Judge and removing Dunston from the position. The following day, Dunston received a letter that memorialized that decision and indicated that although Dunston was being removed as Presiding Judge, such removal did not affect Dunston's position as a judge of the Superior Court. The letter indicated that Dunston would be removed as Presiding Judge effective June 25, 2016, at 11:59 P.M.

Thereafter on June 22, 2016, Dunston filed a complaint under the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking a declaration that Mapp's attempt to remove Dunston as Presiding Judge violated Virgin Islands law and the Revised Organic Act. Dunston also sought injunctive relief.

On that same day, Dunston filed a motion for a temporary restraining order. On June 24, 2016, the Court held an evidentiary hearing on the motion. The Court then granted the motion and entered a temporary restraining order enjoining Mapp from removing Dunston as Presiding Judge until July 8, 2016.[3]

---

[3] The temporary restraining order was subsequently extended to enjoin Dunston's removal until July 22, 2016.

The Court also scheduled a trial on the merits to commence on July 5, 2016. The parties agreed that the record from the temporary restraining order would function as the trial record and stipulated to the admission of a few additional documents. The parties have also submitted trial briefs addressing the relevant law.

On that record, the Court will determine whether Dunston is entitled to the declaratory and injunctive relief that he seeks.

## II.  <u>DISCUSSION</u>

### A. Jurisdiction

As a preliminary matter, Mapp challenges the Court's jurisdiction over this case. Dunston seeks a declaratory judgment under the Declaratory Judgment Act. In pertinent part, the Declaratory Judgment Act provides that:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

"A case does not arise under federal law simply because it is brought pursuant to the Declaratory Judgment Act." *Bd. of Chosen Freeholders of Cty. of Burlington v. Tombs*, 215 F. App'x

*Dunston v. Mapp, et. al.*
Civil No. 2016-38
Memorandum Opinion
Page 5

80, 81 (3d Cir. 2006). Instead, "[t]he Declaratory Judgment Act permits the discretionary exercise of jurisdiction over suits otherwise falling under federal subject matter jurisdiction." *United States v. Com. of Pa., Dep't of Envtl. Res.*, 923 F.2d 1071, 1074 (3d Cir. 1991). Therefore, the Court must look to whether it could otherwise exercise jurisdiction over the claims underlying Dunston's request for a declaratory judgment. *See id.*

In his complaint, Dunston alleges that:

> 17. Plaintiff is entitled to a declaration and determination that Defendant Mapp's unilateral actions in removing and replacing Plaintiff as Presiding Judge violated separation of powers principles and unlawfully interfered with the independence of the Virgin Islands judiciary, all contrary to the Revised Organic Act of 1954, enacted pursuant to Congress pursuant to its powers under the Territorial Clause, Territorial Clause [sic] of the Constitution. Section 3, art. 4, Const. U. S.

> 18. Plaintiff is further entitled to a declaration and determination that Defendant Mapp's unilateral actions in removing and replacing Plaintiff as Presiding Judge, without any prior adjudication of judicial misconduct or other grounds for disqualification by the Commission on Judicial Conduct or any other tribunal or court of competent jurisdiction, was ultra vires, outside the executive powers of the Governor; and wholly unauthorized by Virgin Islands law.

Civil No. 16-38, ECF No. 1, at ¶ 17-18. Dunston further alleges that the Court has "federal question jurisdiction . . . under

*Dunston v. Mapp, et. al.*
Civil No. 2016-38
Memorandum Opinion
Page 6

18 [sic] U.S.C. § 1331"[4] with regard to the claim that Mapp's

actions are prohibited by the Revised Organic Act, and

supplemental jurisdiction over the claim that Mapp's actions

violate local law. *Id.* at ¶ 5-6.

Mapp argues that no substantial federal question is

presented here because the "Revised Organic Act does not create

tenure or salary protections for local judges" and Dunston "has

not cited a single specific provision of the Revised Organic Act

that has been violated."

This case bears a number of similarities to *Kendall v.*

*Russell*. No. CIV. 2007-126, 2008 WL 219762 (D.V.I. Jan. 16,

2008), *aff'd*, 572 F.3d 126 (3d Cir. 2009). In that case, the

Virgin Islands legislature, through Act 3876, created a

government commission called the Commission on Judicial

Disabilities (the "Commission"). The "Commission . . . [was]

composed of five members. Two members  . . . [were] appointed by

the Governor of the Virgin Islands, two by the President of the

Legislature, and one by the Board of Governors of the Virgin

Islands Bar Association." *Kendall*, 2008 WL 219762, at *1. The

Commission was "empower[ed] . . .  to retire or remove a judge

of the Superior Court of the Virgin Islands or a justice of the

Supreme Court of the Virgin Islands." *Id.*

---

[4] The Court understands this reference to be to 28 U.S.C. § 1331.

*Dunston v. Mapp, et. al.*
Civil No. 2016-38
Memorandum Opinion
Page 7

Two judicial complaints were filed with the Commission alleging misconduct by Judge Leon A. Kendall ("Kendall"), a judge of the Superior Court. *Id.* at *2. The Commission informed Kendall that it would hold a hearing on the two complaints. *Id.* Kendall then filed a:

> two-count action, generally alleging a violation of the Revised Organic Act of 1954 (the "ROA"). Specifically, in Count One, Kendall . . . s[ought] a declaration from this Court that (1) the principle of separation of powers, as contemplated by the ROA, prohibit[ed] the Commission from conducting removal proceedings against him, and (2) Act 3876 [wa]s ineffective to authorize such proceedings because the legislative branch of the Government of the Virgin Islands . . . [could] not grant itself the power to remove a member of the judicial branch. In Count Two, Kendall s[ought] injunctive relief to prevent the Commission from commencing or continuing removal proceedings against him.

*Id.* at *2.

This Court held that it had subject-matter jurisdiction to address the issue because the legal "question implicate[d] the . . . [Revised Organic Act ("ROA")], a federally-enacted statute." *Id.* On appeal, the Third Circuit affirmed, stating, in relevant part, that "[a]s the ROA is a federal statute, the District Court had federal question jurisdiction in this case pursuant to 28 U.S.C. § 1331." *Kendall v. Russell*, 572 F.3d 126, 144 (3d Cir. 2009).

*Dunston v. Mapp, et. al.*
Civil No. 2016-38
Memorandum Opinion
Page 8

Mapp attempts to distinguish this case from *Kendall v. Russell* because of two significant differences between *Kendall v. Russell* and this case. First, Mapp asserts that while Dunston would lose his position as Presiding Judge of the Superior Court, Dunston would retain his position as a judge of the Superior Court. Mapp also argues that federal jurisdiction is wanting because Dunston alleges that the action taken against him violates local law.

Mapp argues that there is no basis for the federal claim because Dunston, unlike Kendall, would retain a position as a judge. However,

> dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is "so insubstantial, implausible, foreclosed by prior decisions of th[e Supreme] Court [of the United States], or otherwise completely devoid of merit as not to involve a federal controversy."

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89, 118 S. Ct. 1003, 1010, 140 L. Ed. 2d 210 (1998). As will become evident during the Court's discussion of the merits, Dunston's claim under the Revised Organic Act is not "so insubstantial, implausible, foreclosed by prior decisions of th[e Supreme] Court [of the United States], or otherwise completely devoid of merit as not to involve a federal controversy" such that the Court cannot exercise federal question jurisdiction over it.

*Dunston v. Mapp, et. al.*
Civil No. 2016-38
Memorandum Opinion
Page 9

Where, as here, a court is satisfied that it may exercise federal question jurisdiction over the interpretation and construction of federal law--here, the Revised Organic Act--the court has:

> supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).

> Claims are part of the same constitutional case if they "derive from a common nucleus of operative fact," and "are such that [the plaintiff] would ordinarily be expected to try them all in one judicial proceeding . . . ."

*Sinclair v. Soniform, Inc.*, 935 F.2d 599, 603 (3d Cir. 1991)(alterations in original)(quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966)).

Here, the local statutory claim and the Revised Organic Act claim arise from a common nucleus of operative fact: Mapp's allegedly illegal removal of Dunston from the office of Presiding Judge. Therefore, Dunston's claims under local law fall within the Court's supplemental jurisdiction. *See Sinclair*, 935 F.2d at 603.

Accordingly, the Court may exercise federal question jurisdiction over the Revised Organic Act claim pursuant to 28

*Dunston v. Mapp, et. al.*
Civil No. 2016-38
Memorandum Opinion
Page 10

U.S.C. § 1331; and may exercise supplemental jurisdiction over

the local law claim pursuant to 28 U.S.C. § 1367(a).

**B. Abstention**

Mapp also argues that *Pullman* abstention is appropriate in

this case.

> *Pullman* abstention allows federal courts, in rare
> cases, to abstain from deciding a case if a state
> court's resolution of a state law issue would
> obviate the need for the federal court to reach a
> federal constitutional issue . . .
>
> [A] district court must make three findings in order
> to justify the *Pullman* exception to the general rule
> that federal courts must hear cases properly brought
> within their jurisdiction. The Court must find (1)
> that uncertain issues of state law underlie the
> federal constitutional claims brought in the
> district court; (2) that the state law issues are
> amenable to a state court interpretation that would
> obviate the need for, or substantially narrow,
> adjudication of the federal claim; and (3) that
> important state policies would be disrupted through
> a federal court's erroneous construction of state
> law. *See Chez Sez III Corp. v. Township of Union,*
> 945 F.2d 628, 631 (3d Cir.1991). If all three factors
> are present, the federal court must then consider
> whether abstention is appropriate by weighing such
> factors as the availability of an adequate state
> remedy, the length of time the litigation has been
> pending, and the impact of delay on the litigants.
> *Id.* at 633.

*Artway v. Attorney Gen. of State of N.J.*, 81 F.3d 1235, 1270 (3d

Cir. 1996)

As a threshold issue, the Court must determine whether this

case presents a federal constitutional issue that would justify

*Dunston v. Mapp, et. al.*
Civil No. 2016-38
Memorandum Opinion
Page 11

the application of *Pullman* abstention. To satisfy this

requirement, the case must present a "*substantial* federal

constitutional claim." *See United Servs. Auto. Ass'n v. Muir*,

792 F.2d 356, 363 (3d Cir. 1986)(emphasis supplied).

The Revised Organic Act is a federal statute. At the same

time, it is "the Virgin Islands' analogue of a state

constitution . . . ." *Mapp v. Lawaetz*, 882 F.2d 49, 51 (3d Cir.

1989)(emphasis supplied). Significantly, it is not the federal

constitution.

Having considered the matter, the Court has identified two

constitutional provisions that are arguably implicated in this

case. The first provision is the Supremacy Clause.

> The Supremacy Clause of the United States
> Constitution provides that the laws of the United
> States "shall be the supreme Law of the Land . . .
> any Thing in the Constitution or Laws of any State
> to the Contrary notwithstanding." U.S. Const. Art.
> VI, cl. 2. This principle applies to the laws of the
> Virgin Islands through the Revised Organic Act,
> which authorizes the Virgin Islands legislature to
> enact territorial laws that are "not inconsistent
> with . . . the laws of the United States made
> applicable to the Virgin Islands . . . ." 48 U.S.C.
> § 1574(a).

*St. Thomas-St. John Hotel & Tourism Ass'n. Inc. v. Gov't of U.S.*

*Virgin Islands ex rel. Virgin Islands Dep't of Labor*, 357 F.3d

297, 302 (3d Cir. 2004). Significantly, a Supremacy Clause issue

is not the type of federal constitutional issue that justifies

*Pullman* abstention. *United Servs. Auto. Ass'n*, 792 F.2d at 364.

The second "provision" is the separation of powers
principles inherent in the structure of the United States
Constitution. The Revised Organic Act also incorporates
separation of powers principles. *Smith v. Magras*, 124 F.3d 457,
465 (3d Cir. 1997). Although this issue is a matter of first
impression, the Court is satisfied that the Revised Organic
Act's incorporation of separation of powers principles does not
raise a constitutional issue that would implicate *Pullman*
abstention. The Revised Organic Act is not a mirror of the
United States Constitution. It is true that both the Revised
Organic Act and the Constitution provide for separation of
powers. It is also true that, where, as here, a claim is made
that there is a violation of the principle of separation of
powers, which is "incorporated . . . into the law of the
territory," *id.*, this Court must look to the text of the Revised
Organic Act to discern congressional intent. *See Kendall v.
Russell*, 572 F.3d 126, 136-37 (3d Cir. 2009)(noting that where
Congress intended to provide for removal of officials, it
provided for that removal in the Revised Organic Act). In
contrast, congressional intent does not dispose of
constitutional separation of powers issues. Therefore, while the
Court may look to interpretations of the federal constitution as
persuasive authority when interpreting the Revised Organic Act's

*Dunston v. Mapp, et. al.*
Civil No. 2016-38
Memorandum Opinion
Page 13

separation of powers, the Court is not interpreting the federal

constitution.

Accordingly, *Pullman* abstention does not apply in this case

because no substantial federal constitutional issue is

presented.

## C. Merits

Dunston seeks a permanent injunction enjoining Mapp from

removing Dunston as Presiding Judge.

> In deciding whether to grant a permanent injunction,
> the district court must consider whether: (1) the
> moving party has shown actual success on the merits;
> (2) the moving party will be irreparably injured by
> the denial of injunctive relief; (3) the granting of
> the permanent injunction will result in even greater
> harm to the defendant; and (4) the injunction would
> be in the public interest.

*Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001). The

Court will consider each of these requirements in turn.

## 1. Actual Success on the Merits

Dunston's several arguments challenge the Governor's

action. The determination whether the challenged action is valid

requires the Court to evaluate the legal underpinning of the

Governor's actions. That exercise necessarily involves this

Court interpreting relevant provisions of the Virgin Islands

Code and the Revised Organic Act.

The Virgin Islands Code provides that "judges of the
Superior Court . . . [are] appointed by the Governor with the
advice and consent of the Legislature." 4 V.I.C. § 72(a).  They
"hold their offices for a term of six years unless sooner
retired or removed . . . ." 4 V.I.C. § 73. After the six-year
period expires, judges of the Superior Court may remain "in
office until their successors are appointed and confirmed or
until they are renominated and confirmed, but  . . . [cannot]
remain in office more than 120 days after the expiration of
their terms unless they have been renominated and confirmed," 4
V.I.C. § 72(a).

4 V.I.C. § 71 ("Section 71") addresses the composition and
structure of the Superior Court. Indeed, Section 71 instructs
that from the ranks of the judges of the Superior Court, the
Governor:

> shall designate one of the judges of the court to
> serve as presiding judge of the court to preside for
> *such term*, perform such duties, and exercise such
> authority *as may be otherwise provided by law, or by
> rules of the court.*

4 V.I.C. § 71 (emphasis supplied).

On its face, Section 71 does not provide a specific term
for the position of Presiding Judge. Rather, it indicates that
the term of the Presiding Judge may be "otherwise provided by
law, or by rules of the court." *Id.* Thus, it stands to reason

*Dunston v. Mapp, et. al.*
Civil No. 2016-38
Memorandum Opinion
Page 15

that the term of the Presiding Judge, to the extent it is

prescribed, should be found in a statute or a rule of the

Superior Court. In search of such a provision, the Court has

undertaken an exhaustive search of the rules of the Superior

Court.[5] That search has revealed no rule that prescribes a term

for the Presiding Judge.

Having determined that no rule of the Superior Court

prescribes a term for the Presiding Judge, the Court will

consider whether the term of the Presiding Judge of the Superior

Court has been prescribed by statute. An exhaustive search of

Virgin Islands law reveals only one provision that prescribes a

term for judges of the Superior Court, 4 V.I.C. § 73 ("Section

73"). Section 73, as the Court previously noted, provides that

"[t]he judges of the Superior Court shall hold their offices for

a term of six years unless sooner retired or removed in

accordance with the provisions of this title." 4 V.I.C. § 73.

Significantly, Section 73 does not explicitly prescribe a term

---

[5] The Revised Organic Act provides local courts with the authority to issue
rules:

> The rules governing the practice and procedure of the courts
> established by local law and those prescribing the
> qualifications and duties of the judges and officers thereof,
> oaths and bonds, and the times and places of holding court
> shall be governed by local law or the rules promulgated by
> those courts.

48 U.S.C. § 1611(c).

for the office of the Presiding Judge. Thus, the term
contemplated by Section 73 can only extend to a term other than
the duration of a Superior Court judge's appointment if the
effect of Section 73 was intended to be broader than its
explicit language.

In determining the effect of Section 73, the Court is
guided by general principles of statutory construction. "In
interpreting a statute, courts should endeavor to give meaning
to every word which . . . [the legislature] used and therefore
should avoid an interpretation which renders an element of the
language superfluous . . . Thus, the preferred construction of a
statute and its regulations is the one that gives meaning to all
provisions." *Idahoan Fresh v. Advantage Produce, Inc.,* 157 F.3d
197, 202 (3d Cir.1998)(internal citations omitted); *see also
Kendall* 572 F.3d at  143 ("It is a well known canon of statutory
construction that courts should construe statutory language to
avoid interpretations that would render any phrase
superfluous.").

Interpreting 4 V.I.C. § 73 to provide a term for the
position of Presiding Judge in addition to providing a term for
the position of judge of the Superior Court is problematic. 4
V.I.C. § 73, which provides a six-year term for judges of the
Superior Court, was enacted at the same time as 4 V.I.C. § 71,

which provides that the Presiding Judge serves for such term as
otherwise set by statute or court rule. If 4 V.I.C. § 73
contemplated a six-year term for the office of Presiding Judge,
then the language that permits the Presiding Judge's term to be
set by other statute or by court rules would be rendered
entirely superfluous. The Presiding Judge's term would have been
contemporaneously set by statute and, as such, there would have
been no need to set the term by other statute. Moreover, because
the term was set by statute, no judicial rule could vary from
the command of the statute.

As such, the Court is not satisfied that 4 V.I.C. § 73 is
amenable to the interpretation that it, *de jure*, creates a six-
year term of office for the Presiding Judge. Because there is no
other statute that prescribes a term for the Presiding Judge,
the Court holds that there is no term associated with the
office.

Having determined that there is no set term for the
Presiding Judge, there are at least two broad issues raised.
First, does a gubernatorial designation of a Presiding Judge
without a term permit the Governor to remove the Presiding Judge
at will? Second, does the Governor lack removal power such that
the designation of the presiding Judge is an "unlimited"

*Dunston v. Mapp, et. al.*
Civil No. 2016-38
Memorandum Opinion
Page 18

designation, constrained only by the Presiding Judge's underlying term as a judge of the Superior Court?[6]

4 V.I.C. § 71 grants the Governor the power to "designate" the Presiding Judge. It does not expressly grant the power to remove a judge from that designated office. Certainly, in the context of an executive appointment, it is well established that "[i]n the absence of specific provision to the contrary, the power of removal from office is incident to the power of appointment." *Keim v. United States*, 177 U.S. 290, 293, 20 S. Ct. 574, 574, 44 L. Ed. 774 (1900). This is true even for officers that are not exercising purely executive powers. *See Chabal v. Reagan*, 841 F.2d 1216, 1219 (3d Cir. 1988)("In light of *Myers, Humphrey's Executor,* and *Wiener,* when a federal officer like Chabal claims a right to retain his office in the face of a decision by the President to remove him, the officer must make not one, but two showings. He must show that he does not exercise purely executive powers, for otherwise the President's power to remove him is absolute. If he succeeds in his first task, he must then demonstrate that Congress in fact

---

[6] A Presiding Judge cannot serve as Presiding Judge once he is no longer a judge of the Superior Court. Such a limit is implied in the other statutes passed by the Virgin Islands Senate that address the structure of the Superior Court. *See, e.g.,* 4 V.I.C. § 72(c)("The judges of the Superior Court shall be officers of the Government of the Virgin Islands and each shall receive a salary of not less than $35,000 per annum, *except* that the Presiding Judge shall receive a salary of not less than $37,500 per annum.")(emphasis supplied).

*Dunston v. Mapp, et. al.*
Civil No. 2016-38
Memorandum Opinion
Page 19

has exercised its authority to limit the President's power of removal. A failure to show either element is fatal."). That power of removal from an office is not evident *across* co-equal branches of government, however.

Regardless, the Court need not determine whether local law authorizes the Governor to remove the Presiding Judge at will. Even assuming *arguendo* that local law confers such authority on the Governor, that authority would violate the Revised Organic Act for several reasons.

Indeed, when Congress passed the Revised Organic Act, it "implicitly incorporated the principle of separation of powers into the law of the territory." *Smith v. Magras*, 124 F.3d 457, 465 (3d Cir. 1997). The separation of powers doctrine "prohibits any branch of government from exercising powers that are reserved for the other branches, unless such an exercise is 'expressly provided [in the Revised Organic Act] or incidental to the powers' that a branch necessarily has." *Kendall v. Russell*, 572 F.3d 126, 135-36 (3d Cir. 2009).

Mapp argues that there is no violation of separation of powers principles because the powers exercised by the Presiding Judge in his capacity as Presiding Judge--rather than in his capacity as a judge of the Superior Court--are properly categorized as administrative or executive, rather than

*Dunston v. Mapp, et. al.*
Civil No. 2016-38
Memorandum Opinion
Page 20

judicial. In support of this argument, Mapp cites to *Mistretta v. United States*, 488 U.S. 361, 109 S. Ct. 647, 102 L. Ed. 2d 714 (1989) and *Daly v. Hemphill*, 411 Pa. 263, 191 A.2d 835 (1963).

In *Mistretta*, John Mistretta ("Mistretta") pled guilty to a charge of conspiring to distribute cocaine. *Mistretta*, 488 U.S. at 368. He then sought a ruling from the district court that the sentencing guidelines promulgated by the United States Sentencing Commission were unconstitutional. *Id.* The district court denied the motion. *Id.* at 370.

Mistretta was then sentenced under the sentencing guidelines. *Id.* at 371. He filed a notice of appeal to the United States Court of Appeals for the Eight Circuit. *Id.* Mistretta and the United States also petitioned for certiorari before judgment. *Id.* The United States Supreme Court granted the petition. *Id.*

The issue before the Supreme Court was the constitutionality of the United States Sentencing Commission. *Id.* at 350. The United States Sentencing Commission is an independent commission in the judicial branch of the United States. *Id.* at 370. It is composed of seven voting members, including at least three federal judges. *Id.* at 368. The

*Dunston v. Mapp, et. al.*
Civil No. 2016-38
Memorandum Opinion
Page 21

President is authorized to remove for cause any member of the United States Sentencing Commission, including the judges. *Id.*

Mistretta argued, in pertinent part, that the President's ability to remove federal judges from the commission violated separation of powers principles. *Id.* at 397-408. The Supreme Court held that the "for cause" removal provision did not render impermissible an otherwise permissible delegation of authority to the judges because "[t]he President's removal power over Commission members pose[d] a . . . negligible threat to judicial independence." *Id.* at 410. In reaching this conclusion, the Supreme Court distinguished between a judge's judicial duties and his service on the Sentencing Commission. *See id.* at 409-12. In *dicta*, the Court asserted that "since the President has no power to affect the tenure or compensation of Article III judges, even if the Act authorized him to remove judges from the Commission at will, he would have no power to coerce the judges in the exercise of their judicial duties." *Id.* at 412. It further noted that "[a]lthough removal from the Sentencing Commission conceivably could involve some embarrassment or even damage to reputation, each judge made potentially subject to these injuries will have undertaken the risk voluntarily by accepting the President's appointment to serve." *Id.* at 411 n.34.

*Dunston v. Mapp, et. al.*
Civil No. 2016-38
Memorandum Opinion
Page 22

In *Daly v. Hemphill*, the plaintiff, John Daly ("Daly"),
pursuant to Pennsylvania statute, was appointed Chief Magistrate
of the City of Philadelphia by the Governor of Pennsylvania.
*Daly*, 411 Pa. at 265-66 & n.1. Shortly after his appointment,
Daly "removed thirteen employees who had served the magistrates'
courts in various capacities." *Id.* at 266.

Daly notified the defendants, "the City's auditing and
disbursing officers, of the dismissals and appointments, and
requested that only payroll vouchers verified and signed by him
be approved for payment." *Id.* The defendants "refused to comply
with . . . [the] request." *Id.*  at 266-67.

Their refusal was based on a resolution previously passed
by the Board of Magistrates. *Id.* The Board of Magistrates
("Board") was composed of all of the magistrates in the city of
Philadelphia. *Id.* at 273 n. 20. Shortly before Daly's
appointment, the Board:

> created a personnel committee to assume the power of
> appointment and discharge of employees and provided
> specifically:
>
> > 'No certification of the payroll shall be
> > effective without the joinder of the Chief
> > Clerk, the Chief Magistrate and the
> > Secretary of the Board of Magistrates;
> > provided, however, that if the Chief Clerk
> > or the Chief Magistrate or both of them
> > shall be unable or unwilling to approve *
> > * * without such cause as shall appear to
> > a majority of the members of the Board of

*Dunston v. Mapp, et. al.*
Civil No. 2016-38
Memorandum Opinion
Page 23

> Magistrates in their sole discretion to be
> good cause then and in that event, the
> Secretary [apparently selected by a
> majority of the Board] shall approve the
> payroll and his signature alone shall be
> sufficient * * *.'

*Id.* at 266 (alteration in original).

Daly then filed suit seeking:

> to enjoin . . . [the defendants] from interfering
> with the performance of his duties as Chief
> Magistrate. Simultaneously, the two employees
> appointed by him instituted actions in mandamus
> against appellants. Subsequently, the thirteen
> dismissed employees were granted permission to
> intervene.

*Id.* at 267.

The trial court "enjoined . . . [the defendants] from

interfering with the actions of the Chief Magistrate, and

ordered them to pay the salaries of . . . [the two employees

appointed by Daly]." *Id.* The matter was then appealed to the

Pennsylvania Supreme Court.

On appeal, the court concluded that "[p]rior to determining

whether or not there is authority in the Chief Magistrate to

appoint and remove employees, it is necessary to resolve a

contention raised by  . . . [one of the intervenors]" that the

Pennsylvania statute providing for appointment of the Chief

magistrate by the Governor "is an unconstitutional infringement

upon the judicial power vested in the magistrates' courts in

violation of the principle of separation of powers, and that the

*Dunston v. Mapp, et. al.*
Civil No. 2016-38
Memorandum Opinion
Page 24

Governor, therefore, is without authority to appoint or remove a

Chief Magistrate." *Id.* at 267-68 (footnotes omitted). Under

the relevant statute, the Governor retained the authority to

remove the chief magistrate after appointment, but upon removal

from the position of Chief Magistrate, the former Chief

Magistrate would continue to serve as a magistrate. *Id.* at 268.

Ultimately, the court determined that there was no

violation of separation of powers principles. It reasoned that:

> the duties of the Chief Magistrate, beyond those
> performed as magistrate, are purely administrative
> and executive responsibilities dealing with the non-
> judicial functions of the magistrates' courts, and
> are not part of the judicial power. The assignment
> of magistrates to Traffic, [sic] Court and to
> divisional police courts must be in accordance with
> a rotation system merely administered by the Chief
> Magistrate. Likewise, provision by him for
> appointment of stenographers and the appointment of
> the chief clerk and deputy stenographic clerk and
> [sic] no more within the judicial power than the
> fixing of compensation of court employees upheld in
> Leahey v. Farrell, 362 Pa. 52, 66 A.2d 577 (1949),
> or the legislative direction placing the Clerk of
> the Court of Quarter Sessions under jurisdiction of
> the city in Lennox v. Clark, 372 Pa. 355, 93 A.2d
> 834 (1953), or the subsequent placing of employees
> of the Clerk of Quarter Sessions under municipal
> civil service in Dwyer v. Dilworth, 392 Pa. 123, 139
> A.2d 653 (1958). He serves as *administrative*
> representative and *executive* head of the Board of
> Magistrates and *executes* the rules and regulations
> which the Board is empowered or authorized to adopt.

*Daly v. Hemphill*, 411 Pa. 263, 268-69, 191 A.2d 835, 839

(1963)(emphasis in original) (footnotes omitted).

*Dunston v. Mapp, et. al.*
Civil No. 2016-38
Memorandum Opinion
Page 25

Both *Mistretta* and *Daly v. Hemphill* counsel in favor of distinguishing between a judge's judicial and non-judicial functions when applying the separation of powers doctrine. *Mistretta* indicates that the executive's authority to remove a judge from administrative or executive duties does not constitute an impermissible encroachment on the judicial branch. *See Mistretta*, 488 U.S. at 411 n.34, 412. *Daly v. Hemphill* extends this characterization of non-judicial duties to many of the duties typically performed by a chief judge.[7]

Here, a number of the powers and duties granted to the Presiding Judge of the Superior Court are properly construed as judicial. For example, by statute, the Presiding Judge's consent is required before a judge of the Superior Court may grant a motion to change venue, 4 V.I.C. § 78, or before a magistrate may try a case on the parties' consent, 4 V.I.C. § 123(d). In addition, the Presiding Judge has discretionary authority to assign cases. *See* Hearing Transcript, June 24, 2016, at 48:12-16 ("[C]ases are generally assigned on a rotating basis to try to ensure their even distribution within a particular division of

---

[7] It is worth noting that many of the duties performed by the chief magistrate in *Daly v. Hemphill* were duties that were performed by the executive branch of the United States Government for the federal courts until 1939. *See* Act of August 7, 1939, 76 Cong. Ch. 501, 53 Stat. 1223-26 (establishing the Administrative Office of the United States Courts and removing budgetary control from the Department of Justice).

*Dunston v. Mapp, et. al.*
Civil No. 2016-38
Memorandum Opinion
Page 26

the Court. However, if a specific case needs to be assigned or reassigned, that's my responsibility.").

The rules of the Superior Court also grant the Presiding Judge increased judicial powers with regard to magistrates. Motions to reconsider bail decisions rendered by a magistrate may be addressed to either the judge assigned to review the magistrate's decision or to the Presiding Judge. Super. Ct. R. 322.2. Moreover, any petition for a writ of mandamus filed in the Superior Court that "seeks to compel a magistrate to perform some duty the magistrate is required to perform but has neglected or refused to perform, or to enjoin action by a magistrate that exceeds his/her authority . . . ." is directed to the Presiding Judge. *See* Super. Ct. R. 322.11(a).

Because the Presiding Judge is granted additional *judicial* powers, the situation presented here is outside the situation presented in *Mistretta* and *Daly v. Hemphill*. Indeed, the circumstances presented here are more similar to the circumstances presented in *Kendall v. Russell.*

In *Kendall v. Russell*, this Court held that the statute granting the Commission on Judicial Disabilities the authority to remove judges of the Superior Court violated the Revised

*Dunston v. Mapp, et. al.*
Civil No. 2016-38
Memorandum Opinion
Page 27

Organic Act. The Court reasoned that:

> after an exhaustive review, the Court has found no
> provision in the ROA that authorizes the Virgin
> Islands Legislature to remove judges of the local
> courts. The absence of any provision on this point
> suggests that Congress did not intend to confer such
> authority on the Virgin Islands Legislature.
> Congress' express grants of removal power in the ROA
> provide further evidence that Congress did not
> intend to vest such power in the Virgin Islands
> Legislature.
>
> The notion that Congress was coy with respect to
> authorizing removal of judges of locally-created
> courts in the ROA, and thus that such authority must
> be inferred, is belied by specific provisions in the
> ROA in which Congress made express grants of removal
> power. For instance, Congress empowered the
> President of the United States to remove a judge of
> this Court. Congress also expressly granted the
> Governor of the Virgin Islands the power to remove
> the heads of the executive departments created by
> the ROA. Finally, Congress provided for the removal
> of all elected public officials by recall.
>
> Here, the Virgin Islands Legislature has assumed the
> authority to remove judges, and delegated that
> authority to the Commission . . . Given the
> significance of the power to remove officials from
> public office, however, that authority is not to be
> lightly inferred.
>
> Indeed, the exercise of the Legislature's authority
> to remove judges must be grounded in some source.
> Similarly, all acts of the Legislature must be
> consistent with federal law. The exercise of the
> authority vested in the Commission is precisely the
> type of exercise that exceeds the limits of the ROA.

*Kendall v. Russell*, No. CIV. 2007-126, 2008 WL 219762, at *9-10

(D.V.I. Jan. 16, 2008)(internal citations and quotations

omitted).

On appeal, the Third Circuit affirmed. It reasoned, in relevant part, that

> Congress demonstrated a clear understanding of how to provide for the removal of government officials. The ROA expressly provides that the President of the United States has the power to remove Virgin Islands district court judges, 48 U.S.C. § 1614(a), that the Governor of the Virgin Islands has the power to remove the heads of executive departments, *id.* §§ 1591, 1597(c), and that the people of the Virgin Islands have the power to remove any elected official by recall, *id.* § 1593(a). The removal power so plainly provided in those parts of the ROA is conspicuously absent in the provision authorizing the Legislature to create local courts and prescribe the qualifications and duties of local judges. *Id.* § 1611(c) . . .
>
> Moreover . . . it [is] extremely doubtful that Congress, in developing the ROA, would ignore that the power to remove officers from a coordinate branch of government is expressly established in the United States Constitution, *see, e.g.,* Art. I, § 2, cl. 5 ("The House of Representatives ... shall have the sole power of impeachment."); Art. I, § 3, cl. 6 ("The Senate shall have the sole power to try all impeachments."); Art. I, § 3, cl. 7 ("Judgment in cases of impeachment shall not extend further than to removal from office, and disqualification to hold and enjoy any office of honor, trust or profit under the United States . . . ."), and is not simply left to inference or presumption. [The Third Circuit] . . . believe[d] Congress would have followed that pattern or otherwise been plain about its intention, had it meant for the Virgin Islands Legislature, operating under a regime of separated powers, to have authority to remove judges.

*Kendall v. Russell*, 572 F.3d 126, 136-37 (3d Cir. 2009).

To be sure, the removal here is not the removal of a judge, as was the case in *Kendall*. Rather, Dunston will be losing his

*Dunston v. Mapp, et. al.*
Civil No. 2016-38
Memorandum Opinion
Page 29

designation as Presiding Judge. That outcome is more than the removal of a title, however. It essentially strips a judicial officer of some of his discretionary judicial powers that are at the core of the presiding judgeship. Indeed, while there are distinctions between *Kendall* and this case, there are material similarities. Chief among them is the exercise of the power of a coordinate co-equal branch of government--here, the executive— that permits that branch to reach into and alter or discontinue the essential functions of another co-equal branch of government--here, the judicial branch--and its exercise of certain discretionary judicial functions.[8]

Accordingly, the Court holds that because the position of Presiding Judge itself has additional discretionary *judicial* duties, any local law permitting the Governor to remove the Presiding Judge at will would violate the Revised Organic Act.

When a court holds that a state or territorial law violates federal law, the Court must determine whether the offensive provision is severable or renders the entire statute invalid. The question of "[s]everability is . . . a matter of state law."

---

[8] It is conceivable, though hard to imagine, an owner of a sports team selecting a new quarterback on a weekly basis without causing immense disruption to the core operation of the team. It is also conceivable that a law, on its face, could countenance one branch of government undertaking acts that could disrupt the core functions of another. Branches of government, however, are not like sports teams. Indeed, unlike a sports team, such undertakings between co-equal branches of government, even if facially permitted in a local statute, find no support upon judicial review.

*Dunston v. Mapp, et. al.*
Civil No. 2016-38
Memorandum Opinion
Page 30

*Leavitt v. Jane L.*, 518 U.S. 137, 139, 116 S. Ct. 2068, 2069,

135 L. Ed. 2d 443 (1996)(applying state law to determine whether

constitutionally infirm provisions of a state statute was

severable from the remainder of the statute).

> Virgin Islands law provides that if:

>> any provision of th[e Virgin Islands] Code, of any
>> amendment hereto, or of any Act or statute of the
>> Virgin Islands, or the application of any such
>> provision to any person, thing, or circumstance, is
>> determined by any court of competent jurisdiction to
>> be invalid, such determination of invalidity shall
>> not affect, impair, or invalidate the other
>> provisions, or the application of the other
>> provisions, of this Code, of any amendments hereto,
>> or of any Act or statute of the Virgin Islands which
>> can be given effect without the invalid provision or
>> application, and to effect this purpose the
>> provisions of this Code, of any amendments hereto,
>> or of any Act or statute of the Virgin Islands are
>> severable.

1 V.I.C. § 51. As such, the Court holds that Section 71 is

invalid insofar as it permits the Governor to remove the

Presiding Judge.

> Accordingly, the Court finds that Dunston has demonstrated

success on the merits of his claim that Mapp lacks the authority

to remove Dunston as Presiding Judge because either: (1) the

Virgin Islands Legislature did not intend local law to permit

the removal of the Presiding Judge by the Governor; or (2) if

the Virgin Islands Legislature did intend local law to permit

*Dunston v. Mapp, et. al.*
Civil No. 2016-38
Memorandum Opinion
Page 31

the removal of the Presiding Judge by the Governor, because such an implied removal power would violate the Revised Organic Act.

## 2. Irreparable Harm

If the Court does not issue injunctive relief, the Governor will, in effect, remain able to remove the Presiding Judge of the Superior Court at will. The only remedy for the removed judges would be, perhaps, a money judgment for any salary that is lost. Such a remedy would not address the interference with the Presiding Judge's judicial duties or the significant harm that would be done to the independence of the judicial branch. Significant interference with the self-government of Native Americans has been held to constitute irreparable harm. *See, e.g., Seneca-Cayuga Tribe of Oklahoma v. State of Okl. ex rel. Thompson*, 874 F.2d 709, 716 (10th Cir. 1989). The Court is satisfied that significant interference in the prerogatives of a co-equal branch of government implicates similar issues. Accordingly, the Court holds that there will be irreparable harm to the judicial branch of the Virgin Islands if the Court does not grant injunctive relief.

## 3. Balancing of the Equities

No harm is evident to the Court if it enjoins the Governor from exercising authority that the Governor cannot lawfully

*Dunston v. Mapp, et. al.*
Civil No. 2016-38
Memorandum Opinion
Page 32

exercise. Accordingly, the Court finds that injunctive relief will not harm the defendants.

### 4. Public Interest

The issues presented here are important to the integrity of the judicial branch. The public interest is served by an adjudication of those issues. *See, e.g., Williams v. Alioto,* 549 F.2d 136, 144 (9th Cir.1977) ("Undoubtedly, the public interest is served by a prompt adjudication of significant constitutional issues."); *cf. Crouch v. Prior, No. CIV.A.1995-108-F-STX*, 1995 WL 673263, at *3 (D.V.I. Nov. 7, 1995) ("This Court declines to view the public interest arguments made by defendants regarding the need for unified corporate governance as being as strong as the public interest involving the constitutional issue of separation of powers."). Indeed, an injunction to maintain the status quo serves the public interest by preventing the Governor from exercising authority that he either was not granted by the Virgin Islands Legislature or that he is prohibited from exercising pursuant to the Revised Organic Act. Accordingly, the Court finds that an injunction would be in the public interest.

### III. <u>CONCLUSION</u>

Dunston challenges an interpretation of Section 71 that would permit the Governor to appoint and remove the Presiding Judge of the Superior Court at will. He asserts that such an

interpretation runs afoul of the separation of powers doctrine.
That argument is not easily addressed as it raises issues that
are both complex and nuanced. Indeed, Section 71 creates the
title of Presiding Judge; empowers the Governor to appoint the
Presiding Judge; and suggests the method for, and the existence
of, a term for the Presiding Judge. Yet, remarkably, neither the
Virgin Islands Legislature, in Section 71 or in any other
provision of Virgin Islands law, nor the Superior Court, in its
rules, has prescribed a term for the Presiding Judge. That
deficiency gave birth to the problem that has now matured and
vexes and confounds the executive and judicial branches of the
Virgin Islands government. It creates a crisis between two co-
equal branches of government.[9]

---

[9] Regrettably, the statutory anomaly that brings the two branches to this
point is not unique. Indeed, there are other legal anomalies implicated in
this case.

    For example, ordinarily, a judicial position created by constitution or
statute requires some legislative enactment to fund or create a salary for
that position. *Cf. Miles v. Graham*, 268 U.S. 501, 508-09, 45 S. Ct. 601, 602,
69 L. Ed. 1067 (1925)("The words and history of the clause [in the United
States Constitution prohibiting the reduction of a judge's salary] indicate
that the purpose was to impose upon Congress the duty definitely to declare
what sum shall be received by each judge out of the public funds and the
times for payment. When this duty has been complied with, the amount
specified become[s] the compensation which is protected against diminution
during his continuance in office."). That maxim does not appear to be the
case here.

    During the hearing on the temporary restraining order, Judge Dunston,
one of whose claims was that his salary would be diminished if he was removed
from his position as Presiding Judge, testified about the procedure by which
the salary for a Superior Court judge is set:

        Because *the statute has never been formally amended to raise
        the salary of either of those positions*, the *practice* over the
        years, in the few instances in which there has been an increase

*Dunston v. Mapp, et. al.*
Civil No. 2016-38
Memorandum Opinion
Page 34


At its core, the authority that the Executive seeks to exercise can only be undertaken if the statute at issue--Section 71--permits such action; and, significantly, if such action does not run afoul of the separation of powers. Section 71 arguably

---

in the salaries for those positions, is that an increased salary is submitted in the proposed budget of the Court, and is then approved by the Legislature as part of the budget process those -- the budget for the Court has submitted -- . . . and approved.

Hearing Transcript, June 24, 2016, at 113:25-114:9 (emphasis supplied). Significantly, a budget presents an *argument* for a lump sum allotment to a given branch of government. It is neither a law, nor imbued with the force of law. *Compare* FY 2016 Operating and Capital Improvement Budget Request, *available at* http://www.legvi.org/CommiteeMeetings/31st%20Legislature%20Committees/COMMITTEE%20OF%20FINANCE/FY2016%20Budget%20Process/06-24-2015%20-%20SCVI,%20SCVIJC/Testimony%20-%20Superior%20Court.Michael%20Dunston.Presiding%20Judge.FY2016.pdf*, with* Act of October 7, 2015, No. 31-0221, 2015 V.I. ALS 7766 (appropriating funds to the Superior Court). Yet, on the strength of a *practice*, the salary for the statutorily created position of judge appears to be set by a judge, not the legislature. *See* 4 V.I.C. § 72(c)(providing a salary *floor* of $35,000 for judges of the Superior Court and $37,5000 for the Presiding Judge).
Of course, these and related peculiarities in Title Four are not problems without solutions. Indeed, with regard to the term of office for the Presiding Judge, a legislative body could set the term, as was done for the office of Chief Justice of the Virgin Islands Supreme Court, *see* 4 V.I.C. § 22(f)(1)(providing for a three year term for the Chief Justice of the Virgin Islands Supreme Court), and as was done for the federal district courts, *see* 28 U.S.C. § 136 (a)(3)(A)(providing for a seven year term for chief judges of the United States district courts, and for the United States Courts of Appeals, *see* 28 U.S.C. § 45(a)(3)(A) (providing for a seven year term for chief judges of the United States Courts of Appeals).
Similarly, to avoid any salary diminution issues or to avoid the creation of a legal impossibility, the Legislature could provide for a Presiding Judge or Chief Justice without an attendant salary increase, as is the case with all federal district courts and United States Courts of Appeals across the nation.
There is no evidence in the record that the Legislature has elected to address these lingering issues. Having said that, the Court hastens to note that that prerogative falls squarely within the bailiwick of the Legislature, not this Court. The Court merely highlights the existence of these issues and the quandary that is created by the *presumption* of a well-conceived and thoroughly considered statute, which, when challenged, reveals inviable underpinnings.

*Dunston v. Mapp, et. al.*
Civil No. 2016-38
Memorandum Opinion
Page 35

does condone such a course. Such a view, understandably, may underpin the efforts of the Executive. That permissive view, however, is not dispositive. Indeed, if it were, a statute that is not fully considered could eviscerate the well-established protections enshrined in the United States Constitution and the Revised Organic Act. Where such law, or other acts of the government, even if well-intentioned, run afoul of those protections, the Court is duty bound to arrest any effort that impugns the integrity of the safeguards created by the United States Constitution and the Revised Organic Act. *See, e.g., Kendall v. Russell*. No. CIV. 2007-126, 2008 WL 219762 (D.V.I. Jan. 16, 2008)(holding that the removal of judges by other branches of government violates separation of powers), *aff'd*, 572 F.3d 126 (3d Cir. 2009); *Council of Ins. Agents & Brokers v. Richards*, No. CIV. 2004-16, 2008 WL 2354742, at *2 (D.V.I. June 3, 2008)(holding that certain local insurance requirements violated the Privileges and Immunities Clause and Equal Protection Clause of the United States Constitution); *Equivest St. Thomas, Inc. v. Gov't of Virgin Islands*, 208 F. Supp. 2d 545, 550 (D.V.I. 2002)(holding that local tax assessments did not comply with the Revised Organic Act), *aff'd sub nom.*

*Bluebeard's Castle, Inc. v. Gov't of Virgin Islands*, 321 F.3d 394 (3d Cir. 2003).

The removal of Judge Dunston from his position as Presiding Judge presents such circumstances. It is beyond cavil that coordinate branches of government are prohibited "from exercising powers that are reserved for the other branches . . . ." *Kendall v. Russell*, 572 F.3d 126, 135-36 (3d Cir. 2009). The executive branch exercising the power to strip a judge of certain discretionary judicial powers is tantamount to allowing the executive at its discretion to preclude a judge from exercising powers reserved to the judicial branch. That exercise is not "expressly provided [in the Revised Organic Act] or incidental to the powers," *id.*, that the executive necessarily has. Moreover, the considerable disruption to the operation of the Virgin Islands judiciary that would result from the executive branch's at-will removal of the Presiding Judge, whose authority includes discretionary judicial acts, is precisely the type of encroachment on the operations of a co-equal branch of government that the separation of powers doctrine regards as *verboten*.

Accordingly, the Court will permanently enjoin Governor

*Dunston v. Mapp, et. al.*
Civil No. 2016-38
Memorandum Opinion
Page 37

Mapp from removing Dunston as Presiding Judge of the Superior

Court.

An appropriate judgment follows.

S\_____

**CURTIS V. GÓMEZ**
**District Judge**